# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **RODNEY BLANCHARD,** ] | |
| ] | |
| Plaintiff, ] | |
| v. ] | |
| ] | |
| **CITY OF BIRMINGHAM, et. al.,** ] | CV-10-BE-2250-S |
| ] | |
| Defendants. ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This matter is before the court on "Defendant City of Birmingham's Motion to Reconsider the Denial of Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment." (Doc. 103). For the reasons stated in this Memorandum Opinion, the court finds the Motion to Reconsider is due to be GRANTED.

"[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 440 F. Supp. 2d 1256, 1267-8 (N.D.Ala. 2006). Motions for reconsideration should not be a "'knee-jerk reaction to an adverse ruling.'" *Id.* (quoting *Summit Medical Center of Alabama, Inc. v. Riley,* 284 F. Supp. 2d 1350, 1355 (M. D. Ala. 2003)). Neither should they be "a platform to relitigate arguments previously considered and rejected." *Reuter,* 440 F. Supp. 2d at 1268 n. 9. Rather, they should be "only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center,* 294 F. Supp. 2d at 1355.

In the instant case, the City does not argue that a change in controlling law intervened some time after the briefing in this case. Neither does it present new evidence to support this motion *that was not available at the time of the summary judgment submission*. Although the City points to what it characterizes as errors of fact in the court's Memorandum Opinion, all but one of the errors of fact cited were those that the City *admitted* in its brief. The court recognizes that after the summary judgment process, the City obtained additional counsel and that its new counsel filed the Motion for Reconsideration. To the extent that its new counsel attempts a second bite at the proverbial apple by disagreeing with the work performed by previous counsel, the court does not find that tactic acceptable. Once a defendant admits certain facts, it cannot hire new counsel and expect the court to wipe those admissions clean and start the summary judgment process all over again. If this were appropriate, litigation would never end, because litigants would keep hiring new counsel every time they received adverse rulings. The court should not and will not reconsider facts previously admitted for summary judgment purposes. In any event, the City has pointed to no evidence that was unavailable to the City the first go-round, and the court will not reconsider these alleged factual errors. *See, e.g., Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that *could have been raised prior to the entry of judgment*." ) (citation and internal quotations marks omitted and emphasis added).

The remaining proper ground for reconsideration is the need to correct clear error or manifest injustice. Although the court will not reconsider the City's arguments involving alleged factual error, it does address the City's arguments involving alleged legal error in applying the law to the facts originally presented.

Blanchard claims that the City's failure to train and supervise officers amounted to deliberate indifference to the constitutional right of persons such as Blanchard to be free from excessive force. As the City points out, the United States Supreme Court has instructed that where "a plaintiff claims that a municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of the County Comm'rs of Bryan Co. v. Brown*, 520 U.S. 397, 405 (1997). Thus, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). To establish deliberate indifference to the rights of those citizens with which its employees come into contact, a plaintiff must provide evidence that the City had notice of the need to train and supervise in a particular area. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). Addressing the crucial notice requirement, the Eleventh Circuit Court of Appeals has explained that a sheriff's department was not liable for the conduct of its employee when the sheriff had no actual notice of the employee's prior unconstitutional practices and "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990). The Eleventh Circuit has acknowledged that "[t]his high standard of proof is intentionally onerous for plaintiff; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability - a result never intended by section 1983." *Gold,* 151 F.3d at 1351 n. 10.

3

The court is troubled by the evidence presented to the court regarding the conduct of Birmingham police force officers, including the failure of a large number of police officers to follow department policies and procedures in the *Warren* incident.  However, upon reconsideration of the evidence presented and reflecting on what a difficult standard a plaintiff must meet to establish a municipality's liability for conduct of its officers, the court finds that Blanchard has not met that high standard of proof, and further, that summary judgment on this claim should have been granted.  Blanchard has presented evidence that a number of officers failed to follow multiple Birmingham Police Department policies in the *Warren* incident.  However, the dismal mishandling of the *Warren* incident and the Police Chief's recognition of that mishandling does mean that this one incident put the City on notice of a need to train and supervise its employees in a particular area and that it made a deliberate choice not to train and supervise despite that need.  *See, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (explaining that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."); *see also Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1310-11 (S.D. Ala. 2001) (finding four of 162 meritorious complaints about excessive force in the department during a five-year-period was an insufficient number as a matter of law to create a genuine issue of material fact as to the city's notice of an unconstitutional pattern and practice).

Further, evidence exists of two prior sustained complaints of excessive force in 2007 against Hooper himself, occurring two years before the incident with Blanchard.  However, the

4

Supreme Court has cautioned that evidence about a particular officer's shortcomings does not alone provide evidence that the department's training is faulty or that the training caused the alleged constitutional violation at bar. As the Court explained:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program .... It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton,* 489 U.S. at 391. Any other approach would mean that cities would be held liable on the basis of respondeat superior, a result that the Supreme Court specifically rejected in *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 693-94 (1978).

Blanchard also presents evidence about other unsustained reports of excessive force regarding Hooper and other officers. The court notes that evidence of complaints of excessive force, without further evidence that the complaints were valid, does not establish a pattern and practice of the department officers using excessive force. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (stating that "the number of complaints bears no relation to their validity" and noting that the officer against whom a large number of complaints was lodged patrolled a high crime area and that a large percentage of those he arrested were continually in trouble with the law).

5

In sum, the court finds that the evidence presented does not establish that the Birmingham Police Department had notice of a need to train and supervise its officers regarding excessive force and attendant reporting and discipline issues, that the City was deliberately indifferent to that need, and that any failure to train caused the alleged violation of Blanchard's constitutional rights.  Therefore, the court finds that the Motion for Reconsideration is due to be GRANTED as to the failure to train claim and that, upon reconsideration, the City's Motion for Summary Judgment is due to be GRANTED on that claim.

Blanchard also claims that the Birmingham Police Department had a custom and practice of turning a blind eye to the unconstitutional behavior of its officers when they used excessive force, when they failed to discipline its officers for the use of excessive force, and when they failed to report incidents of excessive force.  In other words, Blanchard does not claim that the official *policies* on use of excessive force and related reporting and discipline violated citizens' constitutional rights but claims that the custom and practice in administering those policies did.  Although this claim of an unconstitutional custom and practice is different from the claim of failure to train, the failure of Blanchard to present evidence of sufficient incidents to establish a pattern and practice of the use of excessive force and related reporting and discipline and the City's notice about those problems similarly means that Blanchard has failed to prove the existence of that custom and practice sufficient to withstand summary judgment.  Therefore, the court GRANTS the motion for reconsideration on this claim and, upon reconsideration, finds that the motion for summary judgment is due to be GRANTED as to this claim.

As Blanchard asserts no further claims against the City, JUDGMENT is due to be entered in favor of the City and against Blanchard as a matter of law.  The court will proceed to trial with

the claims against Defendant Hooper.

The court will enter a separate Order withdrawing the portions of its previous Memorandum Opinion and Order that addressed the City's Motion for Summary Judgment, and also, consistent with this Memorandum Opinion, granting Summary Judgment for the City.

Dated this 15th day of January, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE